Fill in this information to identify your case:

Debtor 1    Basimah S. Yasin
            First Name          Middle Name          Last Name

Debtor 2
(Spouse, if filing) First Name          Middle Name          Last Name

United States Bankruptcy Court for the: _____ District of New Jersey

Case number    16-11647
(If known)

*U.S. BANKRUPTCY COURT
FILED
NEWARK, NJ
16 MAY -6 PM 11: 5E
JAMES J. WALDRON
BY: M Gonzalez
DEPUTY CLERK*

## Official Form 427

# Cover Sheet for Reaffirmation Agreement

12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

| Part 1: | Explain the Repayment Terms of the Reaffirmation Agreement |
| --- | --- |

**1. Who is the creditor?**

ARMY & AIR FORCE EXCHANGE SVC - MILITARY STAR
Name of the creditor

**2. How much is the debt?**

On the date that the bankruptcy case is filed    $ 167.86

To be paid under the reaffirmation agreement    $ 167.86

$_____ per month for _____ months (if fixed interest rate)

**3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**

Before the bankruptcy case was filed    6.99 + Prime    %

Under the reaffirmation agreement    6.99 + Prime    %    ☐ Fixed rate
                                                          ☒ Adjustable rate

**4. Does collateral secure the debt?**

☐ No
☐ Yes.  Describe the collateral. ____

Current market value    ____

**5. Does the creditor assert that the debt is nondischargeable?**

☐ No
☐ Yes.  Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6. Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts.**

| | Income and expenses reported on Schedules I and J | | Income and expenses stated on the reaffirmation agreement | |
| --- | --- | --- | --- | --- |
| 6a. Combined monthly income from line 12 of Schedule I | $ 12,674 | | 6e. Monthly income from all sources after payroll deductions | $ 12,674 |
| 6b. Monthly expenses from line 22c of Schedule J | – $ 14,644 | | 6f. Monthly expenses | – $ 14,644 |
| 6c. Monthly payments on all reaffirmed debts not listed on Schedule J | – $ 0 | | 6g. Monthly payments on all reaffirmed debts not included in monthly expenses | – $ 0 |
| 6d. Scheduled net monthly income Subtract lines 6b and 6c from 6a. If the total is less than 0, put the number in brackets. | $ (1,970) | | 6h. Present net monthly income Subtract lines 6f and 6g from 6e. If the total is less than 0, put the number in brackets. | $ (1,970) |

Debtor    Basimah S. Yasar                                        Case number (if known) 16-11647

Are the income amounts on lines 6a and 6b different?  ☑ No  ☐ Yes. Explain why they are different and complete line 10.

Are the expense amounts on lines 6c and 6f different?  ☑ No  ☐ Yes. Explain why they are different and complete line 10.

Is the net monthly income in line 6h less than 0?  ☐ No  ☑ Yes. A presumption of hardship arises (unless the creditor is a credit union).
Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses.
Complete line 10.

10. Debtor's certification about lines 7-9

If any answer on lines 7-9 is Yes, the debtor must sign here.

If all the answers on lines 7-9 are No, go to line 11.

I certify that each explanation on lines 7-9 is true and correct.

x _[signature]_  Signature of Debtor 1        x _____  Signature of Debtor 2 (Spouse Only in a Joint Case)

11. Did an attorney represent the debtor in negotiating the reaffirmation agreement?
☐ No
☑ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?
☐ No
☐ Yes

**Part 2  Sign Here**

Whoever fills out this form must sign here.  I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Cover Sheet for Reaffirmation Agreement.

x _[signature]_  Signature                                    Date  4/25/16

_Basimah S. Yasar_  Printed Name

Check one:
☑ Debtor or Debtor's Attorney
☐ Creditor or Creditor's Attorney

Form 2400A (12/15)

Check one:
☑ Presumption of Undue Hardship
☐ No Presumption of Undue Hardship
*See Debtor's Statement in Support of Reaffirmation,
Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT

_____ District of _New Jersey_

In re _____ _Basimah S Yasin_ _____ ,
*Debtor*

Case No. _16-11647_ _____

Chapter _7_ _____

## REAFFIRMATION DOCUMENTS

Name of Creditor: _ARMY & AIR FORCE EXCHANGE SVC - MILITARY STAR_

☐ Check this box if Creditor is a Credit Union

## PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: _____ _Revolving account_ _____
*For example, auto loan*

B. *AMOUNT REAFFIRMED*:    $ _____ 167.86 _____

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before _____ , which is the date of the Disclosure Statement portion of this form (Part V).

*See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is _6.99 +Prime_ %.

*See definition of "Annual Percentage Rate" in Part V, Section C below.*

This is a *(check one)*   ☐ Fixed rate        ☑ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

Form 2400A, Reaffirmation Documents                                                    Page 2

D.  Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☐  $_____ per month for _____ months starting on_____.

☑  Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.
   Revolving account _____
   _____
   _____

E.  Describe the collateral, if any, securing the debt:

   Description:         _____
   Current Market Value $_____

F.  Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

   ☐ Yes.  What was the purchase price for the collateral?        $_____

   ☑ No.   What was the amount of the original loan?              $  167.86

G.  Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $ 167.86 | $  167.86 |
| Annual Percentage Rate | 6.99 +Prime% | 6.99 +Prime% |
| Monthly Payment | $ 21.00 | $  21.00 |

H.  ☐  Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement.  Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:
   _____
   _____

# PART II.    DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A.  Were you represented by an attorney during the course of negotiating this agreement?

   Check one.    ☑ Yes      ☐ No

B.  Is the creditor a credit union?

   Check one.    ☐ Yes      ☑ No

Form 2400A, Reaffirmation Documents                                                                    Page 3

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1.    Your present monthly income and expenses are:

a. Monthly income from all sources after payroll deductions
(take-home pay plus any other income)                              $ _12,074_

b. Monthly expenses (including all reaffirmed debts except
this one)                                                          $ _14,044_

c. Amount available to pay this reaffirmed debt (subtract b. from a.)   $ _(1,970)_

d. Amount of monthly payment required for this reaffirmed debt    $ _21._

*If the monthly payment on this reaffirmed debt (line d.) is greater than the amount you have available to
pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption
of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No
Presumption of Undue Hardship."*

2.    You believe that this reaffirmation agreement will not impose an undue hardship on you or your
dependents because:

Check one of the two statements below, if applicable:

☐    You can afford to make the payments on the reaffirmed debt because your monthly income is
greater than your monthly expenses even after you include in your expenses the monthly
payments on all debts you are reaffirming, including this one.

☑    You can afford to make the payments on the reaffirmed debt even though your monthly income
is less than your monthly expenses after you include in your expenses the monthly payments on
all debts you are reaffirming, including this one, because:
_There have been no changes in income / expenses, however will continue to_
_make payments and will ask family members for help if necessary._

Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following
statement, if applicable:

☐    You believe this Reaffirmation Agreement is in your financial interest and you can afford to
make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

F    3400A, Reaffirmation Documents    Page 4

## PART III.  CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

    (1)    I agree to reaffirm the debt described above;

    (2)    Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

    (3)    The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

    (4)    I am entering into this agreement voluntarily and    fully informed of my rights and responsibilities; and

    (5)    I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date  4/25/16        Signature _____

Date  _____    Signature _____
                                          *Joint Debtor, if any*

### Reaffirmation Agreement Terms Accepted by Creditor

Creditor  ARMY & AIR FORCE EXCHANGE SVC    OT 8th & 4L  3450 A                    , AZ    703
          *Print Name*                                        *Address*

Susan L. Ervin          _____    5/4/2016
  *Print Name of Representative*              *Signature*

## PART IV.  CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

    T    e filed only if the attorney represents the debtor    in the    of negotiating this agreement

I hereby certify that: (1) this agreement    represents a    full and    so and voluntary agreement by the debtor  (2) this agreement does not impose    undue    on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal    c    of this agreement and any default under this agreement.

☑ A presumption of undue hardship has been    isted    ith respect to this agreement. In my opinion, however, the debtor is able to make the required paym___

*Check box, if the presumption of undue    eds up box i    id on page 1 and the creditor is not a Credit Union.*

Date  4/25/16   Signature of Debtor's Attorney _____

        Print Name of Debtor's Attorney  David S. Waltzer

## PART V.  DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A.    DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6.  **When will this Reaffirmation Agreement be effective?**

    a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

   i. **if the creditor is not a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

   ii. **if the creditor is a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court.

    b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement**, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7.  **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B.  **INSTRUCTIONS**

1.  Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2.  Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3.  If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4.  You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 427).

5.  *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form 2400B to do this.

## C.    DEFINITIONS

1.  **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2.  **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3.  **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.



**MILITARY STAR**

TO SERVE YOU

Page 1 of 5

Account Statement: 13 November 2015 to 12 December 2015

Account Ending: 6010

## Account Summary

| | |
|---|---|
| Previous Balance | $83.00 |
| Purchases/Other Debits | $124.36 |
| Payments/Other Credits | $0.00 |
| Fees Charged | $0.00 |
| Interest Charged | $0.50 |
| **New Balance** | **$207.86** |
| Payment Past Due | $11.00 |
| Current Minimum Payment Due | $26.00 |
| **Total Minimum Payment Due** | **$37.00** |
| Statement Closing Date | 12 Dec 2015 |
| Days In Billing Cycle | 30 |

### Credit Limit(s):

| | |
|---|---|
| Military Clothing Plan Credit Limit | $500.00 |
| Military Clothing Available Credit | $292.14 |

### Rewards Points:

| | |
|---|---|
| Beginning Balance | 0 |
| Net Earned | 0 |
| Disbursed | 0 |
| Available Points | 0 |

## Payment Information

| | |
|---|---|
| New Balance | $207.86 |
| **Total Minimum Payment Due** | **$37.00** |
| Payment Due Date | 12 January 2016 |

**Late Payment Warning:** If we do not receive your minimum payment by your "Payment Due Date" and you become 60 days past due (90 days after the closing date of the billing cycle), your account becomes delinquent and your APR may increase to 16.24% tv).

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

For Example:

| If you make no additional charges using this card and each month you pay: | You will pay off the balance shown on this statement in about: | And you will end up paying an estimated total of: |
|---|---|---|
| *Calculated Minimum Payment Due | 8 Month(s) | $208.00 |

* Please refer to the "Important Notices" section of your statement for more information. *

If you would like information about Credit Counseling Services, call us toll free at 1 877 891 STAR (7827) or visit online at: www.justice.gov/ust/eo/bapcpa/ccde/cc_approved.htm

### Questions?

Call Customer Service: 1-877-891-STAR (7827)

To shop online visit: www.shopmyexchange.com

View Statements/Make a Payment/Questions visit: www.MyECP.com

Please send billing inquires and correspondence to:
Exchange Credit Program
Disputes Unit
P.O. Box 650410
Dallas, TX 75265-0410

## Your account is past due 1 payment.

If your account continues to go past due it will impact your account privileges and rewards accrual. To bring the account up to date, please call us to discuss your options. Please see Important Notices section for additional details.

---

*Keep Top Portion for your records   Send Bottom with Payment   Address changes on back of coupon*          Redacted

**PAYMENT IS PAST DUE**

| | | |
|---|---|---|
| Account # | Redacted | 6010 |
| New Balance | | $207.86 |
| Total Minimum Payment Due | | $37.00 |
| Payment Due Date | | 12 January 2016 |

Payment amount
Please make payment to:
**Exchange Credit Program**
Payments in excess of the minimum amount will be applied to interest-bearing plans first.

BASIMAH S YASIN
Redacted E CAISSON WAY
DOVER, NJ 07801-5737

THE EXCHANGE
PO BOX 740890
CINCINNATI OH 45274-0890

Redacted



**MILITARY STAR**

OUR HONOR
**TO SERVE YOU**

Billing Date
Name

Page 2 of 5
12 Dec 2015
BASIMAH S YASIN

## Transactions

| Date | Description | Reference # | Location | Amount |
|------|-------------|-------------|----------|--------|
| 04 Dec 2015 | Charge | 01760125101204804150281 | JBMDL-Dix Mcs Tri Serv | $124.36 |

## Interest Charged

| Date | Description | | | Amount |
|------|-------------|--|--|--------|
| 12 Dec 2015 | Billed Interest | | | $0.50 |
| | | | Total Interest for This Period | $0.50 |

## Interest Charge Calculations

Your Annual Percentage Rate (APR) is the annual interest rate on your account.

| Plan Name | Plan Expiration Date | Beginning Bal. Subject to Interest Rate | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
|-----------|---------------------|----------------------------------------|------------------------------|----------------------------------|-----------------|
| Military Clothing 8 Mos | | $83.00 | 0.00% | $120.31 | $0.50 |

| 2015 Year to Date Interest & Fee Totals | |
|------------------------------------------|--------|
| 2015 Year to Date Interest | $0.50 |
| 2015 Year to Date Fees | $0.00 |

## Important Notices

- **Paying by Allotment?** If you choose to establish an Allotment to pay your account, please be sure to provide DFAS with your 16 digit account number instead of your SSN. This will ensure your payment is posted to the account of your choosing, should you have more than one account with the Exchange.

- Your *Calculated Minimum Payment Due is $26.00. This amount may not be equal to your Current Minimum Payment Due or your Total Minimum Payment due if your account is past due or paid ahead.

- Your account is PAST DUE 1 PAYMENT. Please call 1-877-891-STAR (7827) to discuss your payment options. Please disregard if payment has been made.

- Your account must remain in good standing to continue to earn rewards.

- Please visit online at www.justice.gov/ust/eo/bapcpa/ccde/cc_aoproved.htm to find a Consumer Credit Counseling Service (CCCS) in your area.

- ELIMINATE PAPER STATEMENTS: Here's how to sign up...it's just a few clicks away. Visit www.MyECP.com, log in and enter your account number. Check the box 'DO NOT SEND PAPER STATEMENTS IN THE MAIL'.

(Continued on next page)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## Billing Address Change

*NOTE: Write out complete address even if only changing one item.*

Address Line One

Address Line Two

City                                      State          ZIP/APO

Phone Number



**MILITARY STAR** ⋅ OUR HONOR **TO SERVE YOU**

Billing Date
Name

## Important Notices

- We may report information about your account to Credit Bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

- Calling from outside the USA? Here are the 24/7 automated account access phone numbers:

| | | | |
|---|---|---|---|
| Japan: | 00531-114239 | Norway: 800-14-110 | Korea: 00308-130663 |
| Germany: | 0-800-812-4690 | Italy: 8008-72683 | United Kingdom: 0800-96-1843 |
| Belgium: | 0800-1-6374 | Crete: 00-800-18092003452 | Netherlands: 0800-022-9614 |
| OEF/OIF Countries: | 214-312-6030 (collect) | Guam: 1-800-546-7195 | Turkey/Saudi Arabia: 214-312-6030 (collect) |
| Spain: | 900-971-394 | | |

- NOTICE TO CUSTOMERS MAKING PAYMENT BY CHECK.

  When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.

  When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

  If the electronic fund transfer cannot be completed because there are insufficient funds in your account, we may impose a one-time fee of up to $25.00 against your account, which we will also collect by electronic fund transfer.

  Privacy Act   A Privacy Act Statement required by 5 U.S.C. § 552a(e)(3) stating our authority for soliciting and collecting the information from your check, and explaining the purposes and routine uses which will be made of your check information, is available at www.PCCOTC.GOV/PCCOTC/INDEX.HTM or call toll free at 1 866 945 7920 (local number (Delaware) 302 324 6442, Military DSN 510 428 6824 (option 4, option 5, option 4) to obtain a copy by mail).  Furnishing the check information is voluntary  but a decision not to do so may require you to make payment by some other method.

## Terms and Conditions

> To see a copy of the Terms and Conditions please visit us online at:
> https://www.MyECP.com

**Credit Bureau Reporting:**
In accordance with 31 USC Sec 3711, Exchange Credit program debts are due the Government. Because of this regulation, we are required to advise account holders that sixty days after an amount is shown as past due on the billing statement, we will disclose to consumer reporting agencies a change in the status of the account, from current to past due. The account holder's name, SSAN, credit limit, account balance, delinquent amount and delinquent data will be reported. The account holder has the right to an explanation or review of the debt. Please contact us if there is an error regarding the debt or to establish a payment plan.

**Balance Computation Method:**
We figure the Interest Charges for your Account by applying the Daily Periodic Rate to the "Daily Balance" of your Account (including new purchases) for each day in the Billing Cycle.  We calculate a separate Daily Balance for each of the different categories of your Account (for purchases made under the Retail Plan, the Military Clothing Plan, and any Special Promotions).  To get the "Daily Balance" for each Account category, we take the beginning balance of your Account each day in each category, add any new purchases, and then subtract any unpaid

(Continued on next page)

## Notification of Disputed Item

If you think your bill is incorrect, or if you need more information about an item on your bill, please complete the form below and mail it to:

Exchange Credit Program, Disputes Unit, P.O. Box 650410, Dallas, TX 75265-0410, or fax to: 214-465-2017

Your Name

Account Number

Nature  of Dispute

Transaction Date        Amount        Store Name/Location

Attach any evidence supporting your claim.

You are obligated to pay the portion of your account that is not in dispute.

You are not required to pay the portion of your account that is under investigation.

If we report incorrect information concerning your account to a credit bureau, we will notify the appropriate agency to correct the error.

Account holder's signature is required:



**MILITARY STAR.**

OUR HONOR
**TO SERVE YOU**

Billing Date
Name                    BASIMAH S YASIN

## Terms and Conditions

Interest Charges, unpaid Account Fees, unpaid costs and charges of collection, payments and credits. This gives us the Daily Balance for each category of your Account.

### Special Rule for Credit Card Purchases:

If you have a problem with the quality of goods or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You have this protection only when the purchase price was more than $50 and the purchase was made in your home state or within 100 miles of your mailing address. (If we own or operate the merchant, or if we mailed you the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase).

### Billing Rights Summary

#### In Case of Errors or Questions About Your Bill

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet of paper or you may use the dispute form located on the back of your statement, at the Exchange Credit Program. Disputes Unit. P.O. Box 650410. Dallas, TX 75265-0410 as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter or on the form, give us the following information:

Your name and account number.
The dollar amount of the suspected error.
Describe the error and explain, if you can, why you believe there is an error.
If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question (see form on page 3).



Use your MILITARY STAR® card online or in-store and be automatically entered into the MILITARY STAR & Ashley Gives Back monthly drawing with each transaction. The more you use your card, The greater chance to win!

Entries will consist of all purchases made from first day till last day of the month. Gift card will be issued at closest facility to the customer. Use your MILITARY STAR card at any Army and Air Force Exchange Service facility or shopmyexchange.com and be automatically entered into the Ashley Monthly Sweepstakes. Every purchase you make with your MILITARY STAR card during the month, counts as one entry. The more purchases you make with your MILITARY STAR card increases your chances of winning. For alternate method of entry and complete details, see Official Rules at www.MyECP.com/CustomerAid=PageExchange.com





OUR HONOR
TO SERVE YOU

Billing Date
Name

Page 5 of 5
12 Dec 2015
BASIMAH S YASIN






"YOUR **HOLIDAY BILL** IS ON US" SWEE**P**STAKES





## EXCHANGE CREDIT PROGRAM ACCOUNT OPENING DISCLOSURES

| Interest Rates and Interest Charges | |
|---|---|
| **Annual Percentage Rate (APR) for Purchases** | **10.24%** for Retail Plan purchases<br><br>This APR will vary with the market based on the Prime Rate.<br><br>**0.00%** for Military Clothing Plan purchases |
| **Penalty APR and When it Applies** | 18.24%<br><br>This APR will vary with the market based on the Prime Rate. This APR may be applied to all of your Account balances and new purchases, if you do not pay the full amount of any Total Minimum Payment Due within 60 days of its Payment Due Date.<br><br>**How Long Will the Penalty APR Apply?** If your APRs are increased for this reason, the Penalty APR will apply unless you make six consecutive payments of the Total Minimum Payment Due by their Payment Due Dates, beginning with the first Total Minimum Payment Due that is due immediately after the Penalty APR takes effect. |
| **How to Avoid Paying Interest** | Your due date is at least 25 days after the close of each billing cycle. We will not charge you any interest on purchases if you pay your entire balance by the due date each month. |
| **Minimum Interest Charge** | If you are charged interest, the charge will be no less than $0.50. |
| **For Credit Card Tips from the Federal Reserve Board** | To learn more about factors to consider when applying for or using a credit card, visit the website of the Federal Reserve Board at http://www.federalreserve.gov/creditcard. |

| Fees | |
|---|---|
| **Annual Fee** | None. |
| **Penalty Fees**<br><br>• Returned Payment | $25 |

**How We Will Calculate Your Balance**:  We use a method called "daily balance". See your account agreement for more details.

**Billing Rights**:  Information on your rights to dispute transactions and how to exercise those rights is provided in your account agreement.

---

Variable APRs are based on the 3.25% Prime Rate in effect as of June 1, 2010, which remained in effect as of a date not more than 30 days before you received these Account Opening Disclosures. The variable APR for Retail Plan purchases is 10.24% (a Daily Periodic Rate of 0.02805%), based on a Margin of 6.99% that we added to this Prime Rate. The variable Penalty APR is 18.24% (a Daily Periodic Rate of 0.04997%), based on a Margin of 14.99% that we added to this Prime Rate.

# EXCHANGE CREDIT PROGRAM AGREEMENT

This EXCHANGE CREDIT PROGRAM Agreement ("Agreement") governs the MILITARY STAR® Private Label Revolving Credit Account and the TAKE IT HOME TODAY!℠ Private Label Revolving Credit Account (each, an "Account") available through the Exchange Credit Program and administered by the Army and Air Force Exchange Service ("AAFES"), P.O. Box 650410, Dallas, TX 75265-0410. Your Account application and other documents we provide to modify or supplement this Agreement are incorporated into and made a part of the Agreement by reference. Please read the entire Agreement carefully before you use or permit the use of the Account and keep it for your records.

**1.  Definitions and General Terms:** In this Agreement, the terms "we," "us," and "our" mean the Account creditor to which you applied for an Account or from which you obtain Account credit (AAFES, the Navy Exchange Service Command, the Marine Corps Exchange or the Coast Guard Exchange System), and any entity to which your Account or its unpaid balance may be assigned. The terms "you" and "your" refer to the individual Accountholder who applied for and accepted an Account and the terms of this Agreement (see Section 2). The term "Authorized User" is defined below in Section 5. Any reference to a "Card" means any card we issue to you or an Authorized User that is used to access your Account. Other capitalized terms used below are explained in the context of their first use.

Whenever this Agreement states that we may take certain actions, it means we are authorized to take those actions in our sole discretion. Whenever this Agreement requires or allows you to provide us with a written notice or request related to your Account, you must send that notice or request to Army and Air Force Exchange Service, Exchange Credit Program, P.O. Box 650410, Dallas, TX 75265-0410, unless we have instructed you otherwise in this Agreement, a periodic Account statement, or another document we might provide after this Agreement becomes effective.

**2. When Agreement Is Effective:** You understand and agree that this Agreement is effective as of the first date you or an Authorized User use a Card or the Account.

**3. Your Promise to Us:** You agree to the terms and conditions in this Agreement and promise to do everything this Agreement requires of you. You agree to pay us for all purchases charged to the Account by you and any Authorized User. You agree to pay the Interest Charges (see Section 10 below), Account Fees (see Section 11 below), and all other fees, charges, costs, and expenses as provided in this Agreement, including, without limitation, those described in Section 16 below ("Default and Remedies").

**4. Account Eligibility:** Eligible Exchange patrons who satisfy our creditworthiness standards may open and maintain an Account with us. After you separate from active duty military status, you remain eligible to use the Account if you maintain Exchange privileges. You and your Authorized Users may not make purchases with the Account after your applicable ETS/EAOS date. **You must immediately notify us: (a) about any changes to your ETS/EAOS date; and (b) when you are no longer eligible for military Exchange privileges.**

**5. Authorized Users:** You may authorize family members who are 18 years or older, with current Exchange privileges, to use the Account as an "Authorized User." To do so, you must identify the Authorized User in the Account application or in a written request you send to us after the Account is opened. Any request you make to remove an Authorized User must be sent to us in writing. No one other than you may add or remove the authority of any Authorized User to use a Card or the Account, even if that person has been designated to act for you through a Power of Attorney.

**6. Eligible Account Purchases:** You and each Authorized User may use the Account to purchase qualifying goods and services from us, subject to the terms and conditions of this Agreement. Depending on the Account we maintain for you under this Agreement, you and each Authorized User may use the Account to purchase qualifying goods and services from us under our Retail Plan, Military Clothing Plan (if you qualify), and any Special Promotion plan we may offer from time to time. If your Account is a TAKE IT HOME TODAY! Account, then the Retail Plan and Special Promotion purchases you and Authorized Users may make with the Account are limited to items that a participating Exchange facility has identified as eligible for a TAKE IT HOME TODAY! purchase, and at least one of those eligible items must have a purchase price of $299 or more. We may permit you to combine your purchase of a qualifying TAKE IT HOME TODAY! item with the purchase of other complimentary items that you make on the same day and at the same Exchange facility. Any Account purchases returned to us will result in a credit to your Account, not a cash refund, and may be subject to a restocking fee. Account purchases are subject to the terms of our Retail Plan, unless we determine that those purchases qualify for different treatment under the Military Clothing Plan or a Special Promotion. Terms that apply to a Special Promotion are described in this Agreement, except to the extent those terms are changed by promotional disclosures that modify or supplement this Agreement. Account purchases that qualify for the Military Clothing Plan (formerly UCDPP) are limited to the following: Defense Supply Center Philadelphia (DSCP) procured issue military clothing items and footwear; DSCP organizational clothing and individual equipment (OCIE) items; AAFES commercial uniform clothing, undergarments, insignia and footwear items to be worn with the uniform. Military clothing and equipment offered by other vendors are not eligible for the Military Clothing Plan.

**7. Credit Limits and Available Credit:** The Credit Limit of your Account is the maximum amount you may owe us at any time. The Available Credit of your Account is the amount of credit that remains available to you, up to the amount of your applicable Credit Limit. We may restrict or delay the Available Credit of your Account for risk management purposes, to protect you and us against actual or potential fraud or unauthorized transactions, and for other legitimate reasons. We may establish separate Credit Limits for the Retail Plan and the Military Clothing Plan. When you do not have enough Available Credit to complete a purchase under the Military Clothing Plan, we may allow you to complete that purchase under the Retail Plan (subject to the Available Credit, Interest Charges, Account Fees and other terms and conditions that otherwise apply to Retail Plan purchases). Your Credit Limits will be shown on your monthly Account statements ("Periodic Statements"). You must ensure that your Account balances do not exceed the Credit Limits we set for your Account from time to time, even if we electronically or manually authorize an Account purchase. If your Account balance is more than your applicable Credit Limit, we can still charge you for any and all Account purchases, Interest Charges and Account Fees, and require that you immediately pay any amount exceeding your Credit Limit, without giving up any of our rights under this Agreement. We may increase or decrease your Credit Limits at any time without advance notice to you, subject to any requirements or limitations of applicable law.

**8. Purchase Authorizations:** We may ask that you or any Authorized User provide identification documents to confirm eligibility for an Account purchase. We may decline to authorize any purchase requested on your Account. If the system we use to authorize Account purchases is not working, we may not authorize a purchase, even if your Available Credit is sufficient for that purchase. We will not be liable to you if this occurs. We may not authorize a purchase if you are in Default (see Section 16 below), if the Available Credit under the Account has been suspended or cancelled for any reason, if you have not followed our procedures for requesting a purchase, or for other reasons. You will be bound by any policy we disclose, such as "no returns," "no refund," "no return or credit without receipt," "as is," "store credit only," "all sales final," or similar statements.

**9. Periodic Statements; Billing Cycles:** We will, as required by law, send a Periodic Statement to you or your designee after the end of each Billing Cycle. Each Periodic Statement will show the ending date of the most recent Billing Cycle (the "Closing Date"). A Billing Cycle refers to the number of days between Closing Dates. Each Periodic Statement will show the total amount you owed as of the Closing Date of your prior Periodic Statement (the "Previous Balance"), and the amounts added to and subtracted from the Previous Balance to determine the total amount you owe as of your most recent Closing Date (the "New Balance").

The Periodic Statement will show the minimum amount you must pay (the "Total Minimum Payment Due") and the date on which your payment is due (the "Payment Due Date," which will be at least 25 days after the Closing Date). See Section 12 below for more information about how your Total Minimum Payment Due is determined. Only one Periodic Statement will be sent each month to the address of record for your Account (see Section 15 below). Your Billing Cycle may be changed at any time and for our convenience, as permitted by law.

You should review each Periodic Statement carefully. Subject to any limitations or requirements of applicable law, you may be bound by what the Periodic Statement shows if there is a billing error on your Periodic Statement and you do not advise us of the error within 60 days after we mailed it to you. For more information about billing disputes and your rights, read the section below called "Your Billing Rights."

**10.  Interest Charges:**

**A.  Daily Periodic Rates; Index for Variable Rate Adjustments.** The Daily Periodic Rate used to determine your periodic rate finance charges ("Interest Charges") is determined by dividing the corresponding Annual Percentage Rate by three hundred sixty five (365) or, in a leap year, by three hundred sixty six (366). The resulting Daily Periodic Rate is carried five places past the decimal point, and the last digit is rounded. The Daily Periodic Rates and Annual Percentage Rates applied to Retail Plan and Special Promotion balances may vary from monthly Billing Cycle to monthly Billing Cycle, based on published changes in the index rate that applies to your Account. If your Account balances become subject to the Penalty APR as described below in Section 10(G), the Daily Periodic Rates and Annual Percentage Rates we apply to all of your unpaid Retail Plan, Special Promotion, and Military Clothing Plan balances may vary from monthly Billing Cycle to monthly Billing Cycle, based on published changes in the index rate that applies to your Account. Each variable Daily Periodic Rate and corresponding Annual Percentage Rate is based on the value of a published index rate plus the Margins described below in Section 10(D), in Section 10(G), or in separate documents that modify or supplement this Agreement. The index rate used for variable rate adjustments will be the highest bank prime loan rate published in "Money Rates" section of *The Wall Street Journal* on the Closing Date of your previous Billing Cycle or the business day immediately before that Closing Date (the "WSJ Prime Rate"). Changes in an index rate will be effective as of the first day of a monthly Billing Cycle. An increase in the index rate will result in increased Interest Charges and an increased Total Minimum Payment Due.

**B.  How We Calculate Balances Subject to Interest Rate.** We figure the Interest Charges for your Account by applying the Daily Periodic Rate to the "Daily Balance" of your Account (including new purchases) for each day in the Billing Cycle. We calculate a separate Daily Balance for each of the different categories of your Account (for purchases made under the Retail Plan, the Military Clothing Plan, and any Special Promotions). To get the "Daily Balance" for each Account category, we take the beginning balance of your Account each day in each category, add any new purchases, and then subtract any unpaid Interest Charges, unpaid Account Fees, unpaid costs and charges of collection, payments and credits. This gives us the Daily Balance for each category of your Account.

**C.  Grace Period.** The Periodic Statement for the Billing Cycle with the most recent Closing Date is your "Current Statement." New purchases shown for the first time on your Current Statement will begin to accrue Interest Charges from the date of the purchase, except as provided in this Agreement or as otherwise required by law. New purchases shown for the first time on your Current Statement will begin to accrue Interest Charges until the first day of the following Billing Cycle if: (a) there is no Previous Balance or there is a credit balance for the Billing Cycle shown on your Current Statement; or (b) the sum of payments and credits we received during the Billing Cycle shown on your Current Statement was at least equal to the Previous Balance shown on that Current Statement. To avoid additional Interest Charges, you must pay the full New Balance shown on the Current Statement by the Payment Due Date shown on the same Periodic Statement. We will give you the benefit of a grace period for certain partial payments you make, in those limited circumstances and to the extent required by law.

**D.  Interest Charges for Retail Plan Purchases.** The variable Annual Percentage Rate used to determine the Interest Charges for Retail Plan purchases will be based on the WSJ Prime Rate plus a Margin of 6.99%. The Account Opening Disclosures provided with this Agreement disclose the Annual Percentage Rate and Daily Periodic Rate in effect for Retail Plan purchases on or near the date your Account was opened.

**E.  Interest Charges for Military Clothing Plan.** The non-variable Annual Percentage Rate for purchases qualifying for the Military Clothing Plan is 0.00% (a Daily Periodic Rate of 0.00000%).

**F.  Interest Charges for Special Promotions.** The Interest Charges and other terms and conditions for any Special Promotion will be described in separate promotional disclosures that modify or supplement this Agreement.

**G.  Penalty APR.** A "Penalty APR Triggering Event" will occur if you have not paid a Total Minimum Payment Due within 60 days of its applicable Payment Due Date (in other words, within 90 days after the Closing Date of the Billing Cycle for which we determined this minimum payment was due). If a Penalty APR Triggering Event occurs, we may apply an increased Annual Percentage Rate (a "Penalty APR") on an indefinite basis to the unpaid Account balances for all of your Retail Plan, Special Promotion and Military Clothing Plan purchases and any new Account purchases we permit, except as otherwise provided in this Agreement or required by law. In addition to applying this Penalty APR, we may close your Account to future purchases and exercise other remedies related to this event of Default as provided in this Agreement (see Section 16 below). The Penalty APR is a variable Annual Percentage Rate determined as of the date we first apply it, based on the WSJ Prime Rate plus a Margin of 14.99%. The Account Opening Disclosures provided with this Agreement disclose the Penalty APR in effect on or near the date your Account was opened. If we receive six consecutive payments of your Total Minimum Payment Due by their Payment Due Dates, beginning with the first Total Minimum Payment Due that is due immediately after the Penalty APR takes effect, then we will stop applying the Penalty APR to the unpaid Account balances and any new Account purchases made on and after the date we provided you with notice about the APR increase. An increase to the Penalty APR will result in increased Interest Charges and an increased Total Minimum Payment Due.

**H.  Minimum Interest Charge.** A minimum Interest Charge (a Finance Charge) of $0.50 will be assessed in any Billing Cycle in which an Interest Charge is due, but is less than $0.50.

**I.  Temporary Reductions in Interest Charges.** Your Interest Charges may be temporarily reduced based on military activation or deployment. At the end of your activation or deployment, the Interest Charges will return to the rates then in effect under this Agreement.

**11.  Account Fees.**

**A.  Returned Payment Fee.** If your check, payment instrument, or any form of electronic payment to us is dishonored by your depository institution or returned to us unpaid for any reason, we will assess and add a Returned Payment Fee of $25.00 to your Account.

**B.  Document Copy Fee.** On non-disputed matters and matters unrelated to a Billing Error, and subject to any limitations or restrictions of applicable law, we may require that you pay us a fee of $5.00 each time you request photocopies or reprints of Account and transaction documents.

**12.  Payments; Total Minimum Payment Due; Pay-Ahead Feature. You may pay your New Balance in full any time without penalty or pay it in monthly installments.** Paying your entire New Balance or paying more than your Total Minimum Payment Due will help you reduce or avoid Interest Charges. To pay the New Balance in installments, you must pay us at least the Total Minimum Payment Due for each Billing Cycle by the Payment Due Date shown on each Periodic Statement. Your Periodic Statement will disclose the Total Minimum Payment Due after each Billing Cycle.

Unless the Pay-Ahead Feature applies to your Account as described below, your Total Minimum Payment Due will be the sum of items 1 through 4 below:
1. The greater of:
(a) $10.00 (or the entire New Balance if it is less than $10.00); or
(b) 2.777% of the unpaid balance of your Retail Plan and Special Promotion purchases including accrued Interest Charges for such purchases (or any different percentage of Special Promotion purchases including accrued Interest Charges separately disclosed to you in documents that modify or supplement this Agreement), based on the unpaid balance of such purchases as of the Closing Date for the Billing Cycle during which you made your most recent Retail Plan and/or Special Promotion purchase, plus
2. 12.5% of the unpaid balance of any Military Clothing Plan purchases (if applicable), based on the unpaid balance of these purchases as of the Closing Date of the Billing Cycle during which you made your most recent Military Clothing Plan purchase; plus
3. All past due payments; plus
4. The amount by which your Account balance exceeds any applicable Credit Limit.

We may automatically apply a promotional Pay-Ahead Feature to your Account while your Account remains open and in good standing, if you pay more than the Total Minimum Payment Due by its Payment Due Date. When this promotional Pay-Ahead Feature applies, the amount by which your Account payment exceeds the Total Minimum Payment Due for a Billing Cycle will be treated as your advance payment of part or all of the Total Minimum Payment Due that would otherwise be due in a later Billing Cycle. Any promotional Pay-Ahead Feature we apply will remain in effect until the earlier of: (a) the Billing Cycle in which we determine that the Account payment that made you eligible for the Pay-Ahead Feature will not pay the full amount of the Total Minimum Payment Due otherwise due for that Billing Cycle; (b) the sixth Billing Cycle after we first apply the Pay-Ahead Feature to your Account; (c) the date your Account is closed to further purchases; or (d) the date we determine that your Account is no longer in good standing or otherwise in Default under this Agreement. We reserve the right to determine whether and when to offer this promotional Pay-Ahead Feature. We will not automatically extend, renew or restart any Pay-Ahead Feature that applies to your Account, based on the Account payments you make while the Pay-Ahead Feature is in effect. Account purchases that you make after the Pay-Ahead Feature is first applied affect how long the Pay-Ahead Feature applies to your Account. Interest Charges and Account Fees accrue on all purchases and Account balances as provided in this Agreement while the Pay-Ahead Feature applies to your Account. Paying more than the amount of your required payment while the Pay-Ahead Feature is in effect will help you reduce your Interest Charges. After the Pay-Ahead Feature no longer applies to your Account, you must immediately resume making payment of the Total Minimum Payment Due in the time and manner described in this Agreement and as shown on your Periodic Statements.

If you pay more than the Total Minimum Payment Due shown on a Periodic Statement and this promotional Pay-Ahead Feature does not apply, we may still require that you pay at least the Total Minimum Payment Due shown on each subsequent Periodic Statement.

**13. Method of Payment; Check Endorsements.** You may make payments on your Account by sending personal checks, money orders or other negotiable instruments, payable in U.S. dollars, to the Payment Address shown on your Periodic Statement. Any payments received there will be promptly credited to your Account as specified on your Periodic Statement. Include your payment stub and do not send cash. Your Available Credit may not immediately show a payment has been applied to your Account if any payment you make is not received at the Payment Address shown on your Periodic Statement or is not accompanied by the payment coupon portion of your Periodic Statement. We may also permit you to make Account payments at your local Exchange or online at Exchange Credit Central on www.milexch.com.

**You must not send us any check marked "payment in full," or with similar terms or other conditions, unless both you and one of our authorized representatives have agreed in writing to resolve a dispute in that manner.** We can accept such checks or late or partial payments without losing our right to receive the full amount you owe for your Account under this Agreement.

When you provide a check as payment, you agree that we may use information from your check to make a one-time electronic fund transfer from the deposit account at the financial institution identified on the check or process the payment as a check transaction. When we use information from your check to initiate an electronic fund transfer, funds may be withdrawn from your deposit account as soon as the same day we receive your payment. The electronic fund transfer will be the same as the amount shown on your check, without including any additional amounts. Electronically processed checks (and checks presented electronically) are not returned to you by your depository institution. We will retain an image of your electronically processed check as required by law. In the ordinary course of business, your check will not be provided to you with your deposit account statement, but you can retrieve a copy of your check by contacting your depository institution. Please notify us at the address provided above in Section 1 if you want to learn about other payment options and you prefer not to have your check used in this way.

**14. Application of Payments.** We have the right to apply payments to the Total Minimum Payment Due for your Account in the order and manner we determine in our sole discretion. We will apply payments that exceed your Total Minimum Payment Due in the manner required by law, which generally means that any such excess payment amounts will be applied to your Account balances in descending order, beginning with Account balances subject to higher APRs. Special rules may apply if we offer certain deferred interest or similar programs as a Special Promotion or if we agree to apply payments in a specific manner at your request.

**15. Account Documents We Send to You; Change of Address.** You agree that any Account notices, Periodic Statements, and correspondence (together, "Account Documents") we send will be effective notice to you if sent to the most recent address we maintain for your Account in our records (your Account "address of record"). Initially, your address of record will be the address you provided on your Account application. If any address of record we maintain changes for any reason, you must give us written notice of any new address of record. To update your address of record, you must submit an Account update form to us through your local Exchange, online at www.milexch.com, or using the address provided above in Section 1. You understand and agree that we may update your address of record by using information we receive from national change of address service providers. Account Documents will be deemed given to you when they are hand delivered to you or deposited in the mail using your address of record. If you do not receive any Periodic Statement after you attempt to change the address of record, it is your responsibility to contact us again and verify that any such address of record has been updated.

**16. Default and Remedies.** Subject to any limitations or notice requirements under applicable law, we may declare your Account in default if any of the following occur (each, a "Default"): (a) you do not make any Total Minimum Payment Due by its applicable Payment Due Date; (b) you do not, upon our request, pay the full balance of your Account after the date your Exchange privileges are terminated or you voluntarily ask us to cancel your Available Credit and close your Account as provided in Section 19 below; (c) you do not do anything this Agreement requires of you; (d) you die, are adjudged incompetent or become the subject of a bankruptcy or insolvency proceeding; (e) you have supplied us at any time with misleading, false, incomplete, or incorrect information; (f) you or an Authorized User attempt or make any fraudulent use of the Account, before or after it is suspended or closed; (g) a purchase in which we retain a security interest is transferred, stolen or significantly damaged; (h) we have suspended your check presentation privileges; (i) you default or become delinquent in satisfying other obligations you owe us; or (j) you attempt or authorize an Account payment knowing that the funds needed to pay are insufficient or unavailable for any reason.

Our remedies under applicable law include, without limitation, those available to us under the federal Debt Collection Improvement Act of 1996 (Pub. L. 104-134), the Deficit Reduction Act of 1984 (Pub. L. 98-369), the Debt Collection Act of 1982 (Pub. L. 97-365), and the Federal Claims Collection Act of 1966 (Pub. L. 89-508), each as codified in the United States Code and as amended from time to time, and as implemented by the federal Claims Collection Standards, 31 C.F.R. Parts 900 through 904 and other implementing regulations promulgated by the Department of Defense and other federal agencies, each as amended from time to time. Regardless of anything in this Agreement to the contrary, you understand and agree that we may pursue any one or more of the following remedies after a Default, subject to any notice requirements and other limitations of applicable law. In doing so, we may: (i) close your Account to future purchases and require immediate payment of your entire Account balance; (ii) arrange for garnishment or deduction from your military, retired, or civilian pay of

the maximum amount allowed by applicable law to pay amounts you owe under the Account; (iii) arrange for an offset or deduction of the maximum amount allowed against any federal payment due to you (including a federal income tax refund or a federal salary); (iv) refuse to honor any further attempts by you to purchase from us using a Card, the Account, checks, or any other form of payment; (v) reduce your Credit Limit and cancel or suspend all Available Credit connected with your Account; (vi) terminate any Special Promotion and transfer all related Account balances to the Retail Plan for your Account; (vii) bring an action to collect all amounts owed; (viii) repossess purchases in which we retain a security interest and otherwise seek self-help or judicial remedies available to us as a secured creditor; (ix) notify your unit commander about our Account collection efforts; (x) close and transfer your Account for collection by the AAFES Collections department, a commercial collection agency, or a law firm, in accordance with applicable law; and/or (xi) take any other action allowed by law. Our rights and remedies under this Agreement are cumulative and we may pursue them in any order or combination we consider appropriate. If we refer your Account for collection by a commercial collection agency or law firm, submit your Account for offset through the U.S. Department of the Treasury, or arrange for garnishment or deduction from your military, retired, or civilian pay through your current or former employer, you shall be liable and responsible for paying any and all costs, fees and expenses that these parties charge and that you or we incur in connection with the collection of your Account after Default, except as limited by applicable law. We will tell you in advance and/or give you an opportunity to cure your default only if applicable law requires us to do so.

**17. Lost or Stolen Card; Unauthorized Use.** Each Card we issue remains our property and you must surrender it to us upon our demand. You must sign your Card before its first use. If you notice the loss or theft of your Card or a possible unauthorized use of your Card, you should write to us immediately at Exchange Credit Program, P.O. Box 650410, Dallas, TX 75265-0410 or call us at the customer service numbers listed at the end of this Agreement. You will not be liable for any unauthorized use that occurs after you notify us. You may, however, be liable for unauthorized use that occurs before your notice to us. In any case, your liability will not exceed $50. You agree to cooperate with us while we investigate any unauthorized use. You must identify for us the unauthorized charges from which you received no benefit. We may require that you provide us information in writing to help us find out what happened. We may also require that you comply with certain procedures in connection with our investigation. If you orally give us notice about any loss or theft, you agree to confirm it in writing. You agree that unauthorized use does not include use by a person whom you have given authority to use a Card or the Account and that you will be liable for all use by any such person.

**18. Separation.** Clearing the Exchange during the base or post clearing process does not result in a forgiveness of your Account balance. Even after any separation from service, you remain responsible for all purchases made with the Account and all related Interest Charges, Account Fees and other fees and charges, as provided in this Agreement. If you are an AAFES employee who separates voluntarily or involuntarily, we may offset your final AAFES pay in an amount up to the full amount needed to satisfy the entire balance owed for the Account.

**19. How You May Close Your Account.** You may ask us to cancel your Available Credit and close the Account at any time and for any reason (including when you lose your Exchange privileges).We may ask that you send a cancellation request to us in writing, to the extent permitted by law. We may also ask that you collect and destroy all Cards held by you, an Authorized User, or any other person to prevent any further use of the Account. No one other than you may instruct us to cancel your Available Credit and close the Account, even if they are designated to act for you through a Power of Attorney. You must still pay us the full amount you owe us for the Account under this Agreement, including amounts due for Interest Charges, Account Fees, other authorized fees and charges, and any purchases you or an Authorized User make after the date of your request to close the Account or cancel a Card, except to extent expressly prohibited by applicable law. If you ask to cancel your Available Credit and close the Account, we may require that you pay the full unpaid balance of the Account no later than 30 calendar days from the date of your cancellation request, except as prohibited by law. If you elect to cancel your Account when exercising rights you may have to reject certain changes we propose to make to the terms of your Account or this Agreement, we will not require that you cancel your Account in writing or immediately pay the full unpaid balance of the Account solely because you are exercising these rights (see Section 27 below).

**20. We Have the Right to Close or Suspend your Account.** We may close your Account and cancel or suspend your Available Credit and use of the Account and Cards at any time, with or without cause, and for any reason, subject to any requirements or limitations of applicable law. You and any Authorized Users must not use or attempt to use a Card or the Account after we cancel or suspend your Available Credit or close your Account. We will send written notice to the address of record for your Account (see Section 15 above) notifying you if we have cancelled or suspended your Account and Cards. You must collect Cards held by you, an Authorized User, or any other person, and cut those Cards in half to prevent their further use. Our reasons, among others, for closing your Account and cancelling or suspending your use of the Account or Cards may relate to your loss of Exchange privileges, the length of time in which the Account has been inactive, your failure to notify us of an address change, or any event of Default under the Agreement. You must still pay the full amount you owe us under this Agreement if your Account is closed and your Available Credit is cancelled or suspended, including accrued Interest Charges, accrued Account Fees, other fees and charges provided for in this Agreement, and amounts due for any purchases you or an Authorized User make after the date we attempt to cancel or suspend use of the Account or a Card. You agree to pay us the outstanding balance, Interest Charges, Account Fees and all other fees, charges, costs, and expenses due on your Account under the terms of this Agreement, even if we have closed your Account and cancelled or suspended your use of the Account and Cards. If you are not in Default under this Agreement, we may allow you to pay the amount you owe as otherwise provided under the terms of this Agreement. After an Account is closed and its balance paid in full, you must submit an application to us for a new Account at an Exchange where the Card is accepted or online at www.milexch.com.

**21. Credit Investigation and Credit Reports.** You authorize us to investigate your credit record and verify your income, employment, and other related information with third parties. You understand and agree that your credit report may be requested in connection with processing your initial credit application. You also understand and agree that your credit report may be requested in connection with any subsequent extension of Account credit, request to increase your Credit Limit, renewal or update of your Account, Account collection action, or an investigation of an Account dispute.

You also understand and agree that we may furnish information about the status and payment history of your Account to credit reporting agencies and other creditors as permitted or required by applicable law. We may report information about your Account to credit reporting agencies and others who may properly receive that information. Late payments, missed payments, or other defaults on your Account may be reflected in your credit report.

**If you believe that we have reported inaccurate information about you to a credit reporting agency, notify us in writing at: Exchange Credit Program, P.O. Box 650410, Dallas, TX 75265-0410.** In doing so, identify yourself, your Account, the information you believe is inaccurate, and tell us why you believe the information is incorrect. If you have supporting documents or information, such as a copy of a credit report that includes information you believe is inaccurate, send us the supporting documents and information as well.

**22. Telephone Calls.** You agree that you and we have an established business relationship and authorize us to contact you by telephone about your Account. You agree that we may place such telephone calls using an automatic dialing–announcing device and that such calls will not be unsolicited calls for purposes of applicable law. You agree that we may, from time to time, monitor and/or record telephone calls between you and us to assure the quality of our customer service and for other legitimate business reasons. If you provide a mobile or cellular phone number to us, or if you call us using a mobile or cellular phone, you agree that we and our agents and representatives may make Account collection and servicing calls to your mobile or cellular phone.

**23. Governing Law.** This Agreement and your and our rights and responsibilities related to the Account are governed solely by applicable federal law.

**24. No Waiver by Us.** You agree that we may, without notice to you, waive or refrain from enforcing our rights under this Agreement without losing any of those rights. You agree that we may waive one or more of our rights under the Agreement without affecting any of our other rights. If we waive any right at a particular time, you agree that we are not also waiving the same right in other circumstances or at another time.

**25. Severability.** If any provision of this Agreement is finally determined to be void or unenforceable under any law, rule, or regulation, you agree that all other provisions of this Agreement will still be valid and enforceable.

**26. Assignment of Account.** We may sell, assign or transfer your Account or any interest we hold in your Account at any time, without notice, and without your consent. You may not sell, assign or transfer any of your rights or obligations under this Agreement or the Account, except with our express written consent.

**27. Change In Terms.** Subject to any required notices and other requirements and limitations of applicable law, we may, at any time, change any term of this Agreement, including the Interest Charges and Account Fees that apply to your Account. Unless we explain otherwise in any change in terms notice you receive, the changes we make to this Agreement and your Account will take effect automatically on the date we specify in the notice, even if you do not make any further Account purchases or otherwise agree with the changes. If required by law, our change in terms notice will explain whether there are changes you may reject and, if so, how you may do so and what may result from any decision you make to reject these changes. Except as limited by applicable law or as otherwise provided in our change in terms notice, any change in terms will apply to: (a) all Account purchases made after the effective date of the change; and (b) all unpaid Account balances. No one has the authority to change this Agreement without our express written consent.

**28. Security Interest.** You grant us and we retain a security interest in each Retail Plan and Special Promotion purchase you or an Authorized User make with the Account. To the extent permitted by applicable law, you grant to us and we shall retain a purchase money security interest under the Uniform Commercial Code in each Retail Plan and Special Promotion Plan purchase you make with your Account, as shown on sales slips or other evidence of the sales transaction, until the unpaid balance of that purchase and any related Interest Charges and Account Fees are paid in full. For purposes of determining at any time which Retail Plan and Special Promotion Plan purchases remain subject to our security interest, payments on your Account will be applied in accordance with any mandatory provisions of applicable law and, absent such provisions, shall be applied as follows: first, to Interest Charges, then to any Account Fees, then to pay that portion of the Total Minimum Payment Due for purchases made under the Military Clothing Plan, then to each Retail Plan and Special Promotion purchase in the order that each such purchase was charged to your Account, beginning with the oldest purchase. Retail Plan and Special Promotion purchases made on the same day will be paid off by allocating your payments to the lowest price purchase(s) first. You understand and agree that we may, at our option, record financing or security documents as permitted by applicable law that evidence our security interest in Retail Plan and Special Promotion purchases made with the Account. It is expressly agreed that no security interest is or will be retained or acquired by us in any consumer's principal dwelling or household goods other than those you or an Authorized User purchased with the Account. This does not apply to a lien created by a court judgment. In the event of default, we shall have all the rights of a secured party under applicable law, including, to the extent permitted by applicable law, the right to repossess items that remain subject to our security interest.

**29. Arbitration.** Please read this provision of the Agreement carefully. Unless you exercise your right to opt-out of Arbitration in the manner described below, you agree that certain disputes shall, at your or our election, be resolved by neutral, binding arbitration. Arbitration replaces the right to go to court, including the right to have a jury trial, engage in pre-arbitration discovery (except as may be permitted by the arbitrator), or participate as a representative or member of any class of claimants or consolidated arbitration proceeding. Other rights that you would have if you went to court may also be unavailable in arbitration.

**A. Agreement to Arbitrate.** You agree that any "Dispute" (defined in sub-paragraph D below) will, at your or our election, be resolved by arbitration. This procedure will apply to any Dispute over the interpretation, scope, or validity of this Exchange Credit Program Agreement, the agreement to arbitrate in this arbitration provision, or the arbitrability of any issue, with the sole exception of the waiver in sub-paragraph H of any right to bring or participate in a class action. This agreement to arbitrate is governed by the Federal Arbitration Act, 9 U.S.C. § 1 through §16, as amended.

**B. What Arbitration Is.** "Arbitration" is a means of having an independent third party resolve a Dispute, instead of a judge or jury. Each side has an opportunity to present some evidence to the arbitrator. Arbitration proceedings are private and less formal than court trials. Other rights the parties might have in court might not be available in arbitration. The information that can be obtained in discovery from another party or other third persons in arbitration is generally more limited than in a lawsuit. An arbitrator issues an award. A court may then enforce the arbitrator's award like a court judgment. Courts rarely overturn an arbitrator's decision because there are limits on the reasons an arbitration award can be challenged in court.

**C. Parties to the Arbitration Agreement.** For purposes of this arbitration provision, the terms "you" and "your" include the primary accountholder who applied for and has accepted an Account and each Authorized User of the Account. The terms "we," "our," and "us" include the Account creditor, any entity to which the Account or its unpaid balance has been assigned, and AAFES or any other person or entity servicing the Account on behalf of the Account creditor and any assignee.

**D. Disputes Subject to Arbitration.** A "Dispute" is any claim or controversy related to: (i) our compliance with, and the application and interpretation of, any consumer credit protection law that might govern or apply to all documents, disclosures and correspondence related to the Account and the marketing, origination, servicing, or collection of the Account, including without limitation the federal Consumer Credit Protection Act, 15 U.S.C. §1601 et seq.; (ii) our compliance with, and the application and interpretation of, any contractual obligations and responsibilities established by the Agreement; and (iii) any issue concerning the validity, enforceability or scope of this arbitration agreement. Any such "Dispute" includes, without limitation, claims or demands (whether past, present or future, including events that occurred before opening of this Account), regardless of the type of relief sought (money, injunctive relief, or declaratory relief).

Not every claim or controversy is a "Dispute" for purposes of this arbitration agreement. A "Dispute" for purposes of this arbitration agreement does not include the exercise of claims, defenses, rights, or remedies available to you or us through: (i) the administrative offset process described above in Section 18 ("Separation"); (ii) the administrative garnishment, deduction, and process described above in Section 16 ("Default and Remedies"); or (iii) repossession and self-help process described above in Section 16 ("Default and Remedies"). Neither you, nor we, waive the right to elect arbitration of a Dispute by exercising self-help remedies or seeking or obtaining provisional remedies from an administrative agency, administrative officer, court, or as otherwise provided in Section 16, Section 18, or the federal laws referenced in those sections.

**E. How Arbitration Works.** If a Dispute arises, the party asserting the claim or demand must initiate arbitration, provided you or we may first try to resolve the matter informally or through customary business methods, including collection activity. The party initiating the arbitration must set forth in the notice the nature and factual basis of the Dispute, the names and addresses of all other parties, the amount involved, and the specific relief requested. The party responding to any such notice may answer and similarly set forth any counterclaims. If you claim you have a Dispute with us, but do not initiate the arbitration, we may do so. The arbitration shall be conducted by one neutral and impartial arbitrator mutually agreed upon by you and us. The arbitrator must be an attorney or retired judge. If you and we cannot agree on an arbitrator, you and we agree that an arbitrator may be appointed by a court in accordance with the Federal Arbitration Act (9 U.S.C. §1 et seq.). The arbitrator may conduct all necessary preliminary proceedings, provide for the Exchange of information and/or discovery, and set the time, date, and place of any hearing, after reasonable notice to and consultation with the parties. The award shall be issued, without a written determination, no later than 30 days from the date any hearing is completed.

**F. What Arbitration Costs.** If you initiate the arbitration, you must pay the filing fee and any costs or fees charged by the arbitrator. You may submit a written request asking the arbitrator to waive or reduce its fees, if you are financially unable to pay the filing fee and any costs or fees charged by the arbitrator. You may also request and we may pay the filing fee and any costs or fees charged by the arbitrator, if you are financially unable to do so. The arbitrator or we may require that you provide documents and information demonstrating that you are financially unable to pay the filing fee and other costs or fees charged by the arbitrator. If we initiate the arbitration, we will pay the filing fee and any costs or fees charged by the arbitrator. Unless prohibited by law, the arbitrator may award fees, costs and reasonable attorneys' fees to the party who substantially prevails in the arbitration.

**G. Location of Arbitration.** Unless you and we agree to a different location, the arbitration will be conducted in the same city as the United States District Court closest to your then current mailing address.

**H.  Waiver of Rights.** You are waiving your right to a jury trial, to have a court decide your Dispute, to participate in a class action lawsuit, and to certain discovery and other procedures that are available in a lawsuit. You and we agree that the arbitrator has no authority to conduct class-wide proceedings and is only authorized to resolve the individual Disputes between you and us. The validity, affect and enforceability of this waiver of class action lawsuit and class-wide arbitration, if challenged, are to be determined solely by a court of competent jurisdiction and not by any arbitrator. If such court refuses to enforce the waiver of class-wide arbitration, the Dispute will proceed in court. You and we agree to waive any right to seek or recover punitive damages in any Dispute. No arbitrator shall have the power or authority to award punitive damages, but the arbitrator has the ability to award all other remedies to the prevailing party that are available by statute, at law, or in equity.

**I.  Severability.** If it is determined that any paragraph or provision of this arbitration agreement is illegal, invalid, or unenforceable, then any such illegality, invalidity, or unenforceability shall not affect other paragraphs or provisions of this arbitration agreement. Notwithstanding this severability provision, if a court of competent jurisdiction determines that the waiver in sub-paragraph H of class action lawsuits and class-wide arbitrations is illegal, invalid, or unenforceable, then you and we agree that this waiver shall not be severed and that this arbitration agreement shall be void in its entirety.

**J.  Applicable Law and Review of Arbitrator's Award.** The arbitrator shall apply applicable federal law and the terms of your agreements with us. The arbitrator must apply the terms of this arbitration agreement, including without limitation the waiver of class-wide arbitration. The arbitrator shall make written findings and the arbitrator's award may be filed with any court having jurisdiction. The arbitration award shall be supported by substantial evidence and must be consistent with your agreements with us and with applicable law, and if it is not, it may be set aside by a court. The parties shall have, in addition to the grounds referred to in the Federal Arbitration Act for vacating, modifying or correcting an award, the right to judicial review of whether: (a) the findings of fact rendered by the arbitrator are supported by substantial evidence; (b) the conclusions of law are erroneous under applicable federal law; or (c) the award requires any action in violation of applicable federal law. Judgment confirming an award in such a proceeding may be entered only if a court determines that the award is supported by substantial evidence and is not based on legal error under applicable federal law.

**K.  Survival.** This arbitration provision shall survive: (1) termination or changes to your agreements with us, the Account, or the relationship between you and us concerning the Account; (2) the bankruptcy of any party; and (3) any transfer, sale or assignment of your Account, or any amounts owed on your Account to any other person or entity.

**L.  Right to Opt-Out.** If you do not wish to agree to arbitrate all Disputes in accordance with the terms and conditions of this Section 29, you must advise us in writing at the following address within thirty (30) days of when we mail or otherwise provide this Agreement to you: HQ AAFES – GC G&R, Arbitration Opt Out, 3911 S. Walton Walker Blvd., Dallas, TX 75236-1598.

If you opt-out, you may seek to have your Dispute decided in a court of law, but you agree to waive the right to participate in a class action in any capacity or act as a private attorney general.

**30. Entire Agreement.** This Agreement, together with the accompanying documents and related credit disclosures and any application you signed or otherwise submitted in connection with the Account (which are incorporated by reference in this Agreement), represents the entire agreement between you and us relating to your Account, and supersedes any other prior or contemporaneous agreement between you and us relating to your Account. This Agreement will survive termination of your Account until all amounts due under this Agreement are paid in full. This Agreement may not be changed or amended, except in accordance with the provisions of this Agreement. It is not the intention of the parties that anything in this Agreement should result in the assessment of fees or charges in excess of those permitted by applicable law. If any fee or charge assessed under this Agreement is finally determined to be in excess of that permitted by applicable law, the excess amount will be applied to reduce the outstanding balance in your Account or, if there is no outstanding balance, will be refunded to you.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**


*Your Billing Rights: Keep This Document For Future Use.*

This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.

*What To Do If You Find A Mistake On Your Statement*

If you think there is an error on your statement, write to us at:

Exchange Credit Program
P.O. Box 650410
Dallas, TX 75265-0410

In your letter, give us the following information:

- *Account information:* Your name and account number.

- *Dollar amount:* The dollar amount of the suspected error.

- *Description of problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

- Within 60 days after the error appeared on your statement.

- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors *in writing.* You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

*What Will Happen After We Receive Your Letter*

When we receive your letter, we must do two things:

1.    Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.

2.    Within 90 days of receiving your letter, we must either correct the error or explain why we believe the bill was correct.

While we investigate whether or not there has been an error:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.

- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.

- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.

- We can apply any unpaid amount against your credit limit.

After we finish our investigation, one of two things will happen:

- *If we made a mistake:* You will not have to pay the amount in question or any interest or other fees related to that amount.

- *If we do not believe there was a mistake:* You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within *10 days* telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

*Your Rights If You Are Dissatisfied With Your Credit Card Purchases*

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

1.    The purchase must have been made in your home State or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these is necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)

2.    You must have used your credit card for the purchase.

3.    You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us in writing at:

Exchange Credit Program
P.O. Box 650410
Dallas, TX 75265-0410

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

**Privacy Notice**

Protecting your privacy is important to us. We adhere to the Privacy Act, 5 U.S.C. 552 *et seq.*, as well as the Right to Financial Privacy Act, 12 U.S.C. 3401 *et seq.* We collect nonpublic personal information about you from the following sources:
- Information we receive from you on applications or other forms;
- Information about your transactions with us or others; and
- Information we receive from a consumer reporting agency.
We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as permitted by law. We restrict access to nonpublic personal information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal standards to guard your nonpublic personal information.

**Exchange Credit Program**
**P.O. Box 650410**
**Dallas, Texas 75265-0410**

**Exchange Credit Call Center Telephone Numbers**

CONUS (includes Alaska & Hawaii) 1-877-891-7827

**Toll Free Numbers**
BELGIUM 0800-1-6374
CRETE 00-800-18092003452
GERMANY 0800-812-4690
GUAM 1-800-546-7195
ITALY 8008-72683
JAPAN 00531-11-4239
KOREA 00308-130663
NETHERLANDS 0800-022-9614
NORWAY 800-14-199
SPAIN 900-971-394
UNITED KINGDOM 0800-96-1843

**Collect Numbers**
ICELAND 214-465-6030
SAUDI ARABIA 214-465-6030
TURKEY 214-465-6030